# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | PAUL E. PLUNKETT | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6548 | DATE | 5-9-02 |
| CASE TITLE | Kedron Jones Jr. v. Micheal Sheahan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to dismiss [13] is granted in part and denied in part. Defendants are given 20 days to answer or otherwise plead to the remaining claims in the complaint.
(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 09 2002 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CLH | courtroom deputy's initials | 2002 MAY -9 PM 3:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAY 0 9 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEDRON JONES JR., )
)
        Plaintiff, )
)
v. ) No. 01 C 6548
) Hon. Paul E. Plunkett
MICHEAL SHEAHAN, ERNESTO VELASCO, )
B. GOODWIN, JOHN DOE MAIL ROOM )
EMPLOYES, )
)
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kedron Jones Jr., a pretrial detainee at Cook County Jail, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. Defendants Cook County Sheriff Michael Sheahan,[1] Executive Director Ernesto Velasco, and Beatrice Goodwin have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Jones has filed a response, and defendants have filed a reply. For the following reasons, the court grants in part and denies in part defendants' motion to dismiss.

### I. Standard of Review on a Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 530 U.S. 1234 (2000). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

---

[1] Plaintiff has misspelled defendant Michael Sheahan's first name in the caption. The court will use the correct spelling of defendant's name.



(1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

However, while it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir. 1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). All plaintiffs – whether *pro se* or represented – must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990).

## II. Facts

In line with the foregoing authorities, the following factual statement is drawn from Jones's complaint.

Jones has been seeking *pro bono* legal representation in a capital murder case from July 2000 until April 2001. During this time, he has mailed five to ten letters a week through the Cook County Jail mail room to law firms. The letters have been clearly marked privileged mail and sealed. However, this privileged mail has been opened by mail room employees.

Jones's incoming mail from the law firms to whom he has written has been opened outside of his presence and has been delivered to him days and sometimes weeks after the date of the postmark.

Some of Jones's privileged mail has been opened, read, and stamped "return to sender, detainee discharged." Jones discovered that his privileged mail was being returned to sender when his incoming mail slowed from five to six letters a week to one or two.

Jones has made defendants aware of the situation by filing grievances. He claims that defendants have effectively halted his search for *pro bono* or any other kind of legal representation

in a capitol case, which has forced him to accept legal representation from the Public Defenders' program.

Books, magazines, and stamped envelopes have been taken from his mail on different occasions. He has received books, magazines, and legal pads soiled and with pages or articles missing.

## III. Analysis

Jones makes three claims: (1) that his First Amendment right of free speech and association were violated; (2) that his Sixth Amendment right of access to the courts and Sixth Amendment right to seek counsel of one's choice were violated; and (3) that items mailed to him were stolen or damaged without due process of law as required by the Fourteenth Amendment.

### A. First Amendment Right of Free Speech and Association

Prison officials may open a prisoner's legal mail in his presence. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). However, repeated instances of an inmate's legal mail being opened outside of his presence are actionable. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated claims); *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 306-07 (7th Cir. 1993) (allegations that inmate's legal mail was opened outside of his presence stated claim).

In regard to his outgoing mail, Jones states that he mailed five to ten privileged letters a week from July 2000 until April 2001, that is, approximately 180 to 360 privileged letters in a nine-month period. He claims that mail room employees have been opening and reading this mail. In regard to his incoming mail, Jones states that he received five to six letters a week, that is, 180 to 216 letters during the nine-month period, which slowed to one to two letters a week when his mail was being returned to sender. In his response to the motion to dismiss, Jones attached nine pieces of mail that he claims were legal mail that was opened outside of his presence.

Defendants point out in their reply that of these nine letters, only four are truly privileged. The court agrees that the two letters from the Clerk of the U.S. District Court and the letter from the

Clerk of the Circuit Court of Cook County are not privileged mail, although they had been stamped "LEGAL MAIL–OPEN IN PRESENCE OF INMATE." See *Antonelli*, 81 F.3d at 1431; *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *Stone-El v. Fairman*, 785 F.Supp. 711, 716 (N.D. Ill.1991) (letters from the Clerk of the Court and the like are not privileged and may be opened); Tit. 20, Ill. Admin. Code, Ch. I, Subch. F, Pt. 701(f) (incoming privileged mail means mail from sources identified in subsection (e) except for clerks of courts). The letters from the United States Postal Service, the City of Chicago Department of Police, and the Attorney Registration and Disciplinary Commission also do not fit within any of the categories of privileged mail enumerated in Title 20.[2]

Citing *Morgan v. Montanye*, 516 F.2d 1367, 1370-71 (2nd Cir. 1975), defendants argue that the opening of these four letters are isolated incidents, which state a claim of constitutional significance only if the inmate alleges he suffered some damage as a result of the interference with his mail. Defendants have a major problem with their argument: they have mushed together Jones's

---

[2] Title 20, Chapter I, Subchapter F, Part 701, of the Illinois Administrative Code reads in pertinent part:

e) Outgoing Privileged Mail

Outgoing letters from detainees to persons or organizations listed below which are clearly marked as "privileged" are considered privileged and may be sealed by the detainee prior to submission for mailing. Such letters shall not be opened by the jail staff before mailing and shall be dispatched promptly.
1) Federal or Illinois legislators; Judges of any court or the Illinois Court of Claims or clerks of courts; the Attorney General of the United States and Illinois; the Director of the Federal Bureau of Prisons; and the Governor of the State of Illinois.
2) The Director, Deputy Directors, or Assistant Deputy Directors of the Illinois Department of Corrections; the Chief of the Jail and Detention Standards Unit of the Illinois Department of Corrections; members of the Illinois Prisoner Review Board; and county sheriffs.
3) Chief Executive Officers of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Criminal Division of the Department of Justice, and the United States Customs Service.
4) The John Howard Association.
5) Registered attorneys.
6) Any organization which provides direct legal representation to detainees, but not including organizations which provide referrals to attorneys, such as bar associations.

f) Incoming Privileged Mail

Incoming privileged mail means mail from sources identified in subsection (e) of this Section except for clerks of courts. Incoming privileged mail which is clearly marked as "privileged" may be opened only for the purpose of verifying the recipient and the sender and to ascertain that nothing other than privileged mail is enclosed. Privileged mail shall be opened in the presence of the detainee.

First Amendment right of free expression and association and his Sixth Amendment right of access to the court.

The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition. *Denius v. Dunlap*, 209 F.3d 944, 953-54 (7th Cir. 2000). Jones claims that his outgoing privileged mail, in which he was seeking *pro bono* representation, has been opened and read. Although he did not attach any examples to his response, his allegations are sufficient to state a claim at this stage of the litigation. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was opened, delayed for an inordinate amount of time and sometimes stolen was sufficient to state claim). As noted earlier, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Considering the number of letters that Jones admits to mailing, he will need to demonstrate, not merely allege, how many of these 180 to 360 letters were actually opened and read before being sent on to the addressees.

As to Jones's incoming mail, he has attached four privileged letters that were opened outside of his presence. However, of the approximately 180 to 216 letters he received, he does not state that these were the only letters that were opened outside of his presence. Jones will be given an opportunity to demonstrate that the opening of his mail constituted an ongoing activity.

The court notes that Jones has come close to pleading himself out of court. A plaintiff can plead himself out of court by alleging additional facts showing that a conclusory allegation is not true. *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995); *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993), *cert. denied*, 114 S. Ct. 1837 (1994); *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *Greer v. Roth*, 1995 WL 476594 *1 (N.D. Ill. Aug. 9, 1995). Also, where allegations are inconsistent with a document provided by that party, the document will override the allegation. *See Beam v. IPCO Corp.*, 838 F.2d 242, 245 n.3 (7th Cir. 1988).

In light of the number of letters that Jones states that he mailed out and that he received, if these four letters are all that he can muster up, he will be hard pressed to demonstrate that defendants tampered with his mail. Jones relies on *Bieregu v. Reno*, 59 F.3d 1445 (3rd Cir. 1995). In that case, the plaintiff contended that on 15 occasions, legal mail was opened outside his presence, and he supplied evidence of five instances during a three-month period in which his legal mail was opened. *Id.* at 1452. The opinion does not reveal how many letters the plaintiff actually mailed or received or what kinds of procedures were in place for dealing with inmates' mail. Likewise, in *Castillo v. Cook County Mail Room Department*, 990 F.2d 304, 306 (7th Cir. 1993), the plaintiff alleged that three privileged letters had been opened in a nine-month period. The Court of Appeals reflected that a fact-finder faced with this meager record could not determine whether all of the plaintiff's mail had been opened or merely a fraction. On a more developed record, Jones will need to demonstrate that the alleged tampering with his legal mail went far beyond a few isolated instances.

The court accordingly denies defendants' motion to dismiss as to this claim.

### B. Sixth Amendment Right of Access to the Courts and Sixth Amendment Right to Seek Counsel of One's Choice

Prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state a claim, a prisoner must demonstrate that the deprivation he suffered hindered his efforts to pursue a legal claim and resulted in actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (an injury exists, for example, where inadequacies at the law library might cause a plaintiff's complaint to be dismissed for failure to satisfy some technical requirement, or where he was unable even to file a complaint).

Jones claims that he was effectively halted in his search for *pro bono* representation and thus was forced to accept legal representation from the Office of the Public Defender.

"[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Wheat v. United States*, 486 U.S.153, 159 (1988). Thus, the right to counsel of choice does not extend to an indigent receiving public representation. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989); *United States v.*

*Childress*, 58 F.3d 693, 736 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996). However, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." See *Caplin*, 491 U.S. at 624-25.

Although the court has been unable to locate any case law discussing an indigent criminal defendant's right to seek *pro bono* counsel, it would appear that such a right would flow from the Sixth Amendment. The court emphasizes that the right to seek *pro bono* counsel does not translate into a right to be represented by counsel of one's choice if the indigent criminal defendant is unsuccessful in his search. In light of *Lewis v. Casey*, Jones will need to demonstrate actual prejudice to his search for *pro bono* representation. Considering the number of letters that Jones admits to mailing and the number of responses he received,[3] this will be a high burden. Jones will have to come forward with more than speculation that he could have secured *pro bono* representation if no mishaps had happened to either his outgoing or incoming mail. However, at this stage of the litigation, the court finds it premature to dismiss this claim.

The court accordingly denies defendants' motion to dismiss as to this claim.

**C. Loss of Property**

Jones claims that books, magazines, and stamped envelopes have been taken from his mail on different occasions and that he has received books, magazines, and legal pads in a damaged condition. A loss of property, such as alleged here, does not constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment if the government provides an adequate postdeprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981). Illinois, in fact, provides a remedy for the tort of conversion. See 705 ILCS 505/8(d)(1999); *Clark v. Stahl*, 2000 WL 631306 (N.D. Ill.); *Heimberger v. Village of Chebanse*, 124 Ill.App.3d. 310 (1984). Therefore, any Section 1983 claim regarding

---

[3] Presumably all the lawyers and firms that Jones approached and whose responses he received declined to represent him or else he would not have been forced to accept representation from the Office of the Public Defender.

the items allegedly taken or damaged cannot stand. *See Bullock v. Barham,* 957 F.Supp. 154, 157 (N.D. Ill.1997); *Slaughter v. Anderson,* 673 F.Supp. 929, 930 (N.D. Ill.1987).

The court accordingly grants defendants' motion to dismiss as to this claim.

### D. Official Capacity Liability

Defendants argue next that even if the court finds that Jones has stated a claim of constitutional magnitude, they can be held liable in neither their official nor individual capacities.

As defendants pointed out in their motion to dismiss, Jones does not specify whether he is suing defendants in either their official or individual capacities, or both. Based on the presumption in *Baker v. City of Chicago Police Department,* No. 99 C 1821 2000 WL 556619 (N.D. Ill.),[4] defendants addressed both defendants; official and individual capacities.

An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Liability under 42 U.S.C. § 1983 can be imposed on governmental entities only if the underlying constitutional deprivation resulted from the execution of an official custom, policy or practice. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978). There are three ways in which a municipality can be found to have violated a person's civil rights through its policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that is not authorized by written law or express municipal policy but is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy-making authority. *See Baxter v. Vigo Co. Sch. Corp.,* 26 F.3d 728, 734-35 (7th Cir.1994).

Jones argues that the repeated opening of his legal mail outside his presence constituted a widespread practice. If Jones is able to demonstrate at a later time that not only his legal mail but also all legal mail in general was deliberately tampered with or that no procedures were in place to

---

[4] When a plaintiff fails to indicate whether he is suing defendants in their individual or official capacities or both, normally there is a presumption that complaints against public officials are official capacity claims. *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir. 1985). This presumption is overcome when it is clear that the *pro se* plaintiff may not understand the technicalities of pleading Section 1983 liability. *See Hill v. Shelander,* 924 F.2d 1370, 1373 (7th Cir. 1991).

-8-

deal with an inadvertent opening of legal mail, then he conceivably could hold defendants liable in their official capacities. The court accordingly will not dismiss the official capacity claim against defendants at this time.

### E. Individual Capacity Liability

Individuals cannot be held liable in a Section 1983 action unless they caused or participated in the alleged constitutional deprivation. *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of *respondeat superior* because that doctrine does not apply to § 1983 actions. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

However, to survive a motion to dismiss, "a pleading must only contain enough to 'allow the court and the defendant to understand the gravamen of the plaintiff's complaint,'" *Payton v. Rush Presbyterian-St. Luke's Med.* Ctr., 184 F.3d 623, 627 (7th Cir. 1999) (citing *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)). *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), gives further guidance as to whether Jones has sufficiently linked the defendants to the opening of his legal mail. In *Antonelli*, the Seventh Circuit recognized that high level officials cannot be held liable in their individual capacities by virtue of the doctrine of *respondeat superior* and explained that high level officials normally cannot be held liable for "clearly localized, non-systemic violations." *Id.* at 1428-29. However, high level officials are expected to have personal responsibility for systemic conditions. *Id.* at 1429.

At this stage of the litigation, it is difficult to tell if the problem is non-systemic or systemic. If unidentified employees are intentionally opening and reading Jones's legal mail, then it is clearly a non-systemic problem. If proper procedures have not been set up and are not being enforced for dealing with the large volume of mail that enters and leaves Cook County Jail, then it is clearly a

systemic problem. The court accordingly finds it premature to dismiss any of the defendants at this time. Moreover, if the problem turns out to be unidentified employees who intentionally opened and read Jones's mail, then the supervisors will be in the best position to identify these employees. *See Antonelli*, 81 F.3d at 1428, *citing Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. It is granted as to Jones's claim of stolen and damaged mail. It is denied as to Jones's claims that his First Amendment right of free speech and association and his Sixth Amendment right of access to the courts and Sixth Amendment right to seek counsel of one's choice were violated. It is denied as to defendants' claim that they should not be held liable in either their official or individual liabilities.

Defendants are given 20 days to answer or otherwise plead to the remaining claims in the complaint.

ENTER:

PAUL E. PLUNKETT
UNITED STATES DISTRICT JUDGE

DATED: May 9, 2002