Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6548 | **DATE** | 3/19/2004 |
| **CASE TITLE** | Kedron Jones, Jr. vs. Sheahan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the Court hereby grants defendants' motion for summary judgment in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 22 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 61 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **KEDRON JONES, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 01 C 6548 |
| | ) | |
| **MICHAEL SHEAHAN, ERNESTO** | ) | |
| **VELASCO, B. GOODWIN &** | ) | |
| **JOHN DOE, Mailroom employees,** | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
MAR 2 2 2004

## <u>MEMORANDUM OPINION</u>

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below we grant the motion.

## BACKGROUND

Plaintiff Kendron Jones, Jr. ("Jones") has been charged with murder and is a pre-trial detainee at the Cook County Department of Corrections ("CCDOC"). According to Jones, between July of 2000 and April of 2001 he was seeking pro bono legal assistance in his case and during the period he mailed and received

1

hundreds of letters relating to his case. Jones claims that some of his correspondence with counsel relating to legal matters were opened by mail room employees outside his presence and he claims that he sometimes received mail weeks after the postmark. Jones claims that when he received letters, magazines, and letters weeks after their arrival at the prison they were "soiled" and had pages torn out. Jones also claims that he did not receive some of his letters because they were opened, read, and stamped "return to sender, detainee discharged." Jones brought the instant suit pursuant to 42 U.S.C.§ 1983. Discovery was conducted and Jones sat for a deposition although he complains to the court about having to sit for the deposition and claims that he "was under the impression from earlier conversations with ASA Wiedhuner that [they] would settle this case out of court for an agreed upon sum of money." (P's Mem. Opp. SJ 5).

On May 9, 2002 Judge Plunkett, the prior judge in this case, granted Defendants' motion to dismiss in part and denied it in part. Judge Plunkett held that Jones had alleged a First Amendment right of free speech and association claim based on the alleged tampering with incoming and outgoing mail and thus denied the motion to dismiss that claim. Judge Plunkett also stated that it was premature to dismiss Jones' Sixth Amendment right of access to the courts claim and his Sixth Amendment right to seek counsel of one's choice claim. Judge Plunkett granted

2

Defendant's motion to dismiss Jones' loss of property claim based upon alleged damaged and missing mail. Judge Plunkett denied the motion to dismiss the official capacity claims and denied the motion to dismiss the individual capacity claims. This matter is now before us on Defendants' motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a

motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The United States Supreme Court "has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. . .[and that] [p]rison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Prison officials are permitted to open and inspect a prisoner's legal mail as long as it is done in the prisoner's presence and the mail is not read by the prison inspector. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). An inmate's right to free speech and free

4

association may be violated if prison officials open privileged mail to or from an attorney or mail is delayed for an inordinate amount of time. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996).

I. Individual Capacity Claims

A. Sheahan and Velasco

In regards to the individual capacity claims against Defendants Michael Sheahan ("Sheahan") and Ernesto Velasco ("Velasco") summary judgment is appropriate. The doctrine of *respondeat superior* is not applicable in a Section 1983 action. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, in order to hold a defendant liable in his individual capacity the individual defendant must be "personally responsible for the deprivation of a constitutional right," which can be illustrated by the fact that the defendant "directed the conduct causing the constitutional violation," the violation "occurred with his knowledge or consent," or the defendant acted with "'deliberate, reckless indifference' to the conduct of subordinates." *Id.* In this case Jones has not shown that Sheahan or Velsasco had the necessary involvement in the alleged letter opening or that they turned a blind eye to the opening of the letters. Therefore we grant summary judgment on all claims against Sheahan and Velasco.

5

### B. Mail Opened Outside the Presence of Jones

There are four groups of Jones' mail at issue in this case and we shall address each group in turn. Jones alleges that he had thirty-two pieces of incoming mail that were opened outside his presence. He claims that some of the thirty-two letters were legal mail. According to Jones, he is unable to produce the letters because they were taken from his cell by officers during a raid of his cell. Jones has not pointed to sufficient evidence to substantiate this allegation and he has not shown that there is sufficient evidence for a reasonable trier of fact to conclude that the alleged thirty-two letters contained legal matters and were improperly opened outside the presence of Jones.

Jones also claims that there were twenty other pieces of mail that were improperly opened outside of his presence. Jones claims that he gave the twenty pieces of mail to his aunt. Jones also admits that some of the twenty pieces of mail were copies of some of the thirty-two pieces of mail that were allegedly taken from his cell. Jones has not produced the alleged pieces of mail and we find that he has not pointed to sufficient evidence for a reasonable trier of fact to conclude that the alleged twenty pieces of mail were opened outside his presence. Were it so simple to prove such a claim all an inmate would need to do is assert that he has misplaced

6

piles of legal correspondence that was improperly opened and he would be afforded a trial.

Jones claims that his outgoing mail was being opened. However, he has not pointed to sufficient evidence to support his allegations. Jones complains that he called some of the law firms and the Defendants and they were unable to confirm whether or not they received his mail. There could be any number of explanations for this occurrence. Jones has provided no basis for his assertion that the outgoing mail was opened outside his presence and no evidence that there was a scheme of Defendants to censor his outgoing mail. Therefore, no reasonable trier of fact could find that his outgoing mail was being opened or that it was being censored.

The final group of mail at issue concerns seventeen pieces of mail. Jones attached nine pieces of mail to his response to the motion to dismiss that Jones claims were opened outside his presence. The government does not contest that the mail was opened outside his presence, but argues that only four of the nine pieces of mail contain privileged matters. In response to Defendants' document production request Jones produced eight more pieces of mail. Defendants acknowledge that seven of the eight pieces of mail were legal mail. Jones admits pursuant to Local Rule 56.1 that four of the nine pieces of mail were legal mail and that seven of the eight pieces of mail were legal mail. ( R SF 9, 11). Thus, of the seventeen a

7

reasonable trier of fact could not conclude that more than eleven pieces of the group of seventeen pieces of mail were privileged legal mail.

### C. Mail Room Negligence

Although Jones alleges and in some instances Defendants admits that some of his legal mail was opened outside the presence of Jones, such facts in and of themselves are not sufficient to warrant proceeding to trial. Defendants argue that, based on the evidence, a reasonable trier of fact cannot conclude that Defendants' conduct, if improper, was anything other than negligent conduct. To establish liability under Section 1983 a plaintiff must show that the defendant's conduct was more than merely the result of the defendant's negligence. *See Lewis v. Anderson,* 308 F.3d 768, 773 (7th Cir. 2002)(stating that [n]egligence or even gross negligence does not suffice to give rise to liability under § 1983."); *Kincaid v. Vail,* 969 F.2d 594, 602 (7th Cir. 1992)(holding that there was evidence that the complaint of the plaintiff was not properly processed but also stating: "Nevertheless, it is possible, and we assume it for purposes of this review, that a mistake was made or the complaint mislaid at the clerk's office by the clerks . . .[and] [i]f so, this lapse was a mere isolated incident of negligence and, under the facts set forth here, does not rise

to the level of a constitutional violation actionable under section 1983."); *Brown v. Hardiman*, 1986 WL 8371, at *3 (N.D. Ill. 1986)(stating that "[g]iven the large volume of mail flowing through an institution the size of Cook County Jail, occasional deviations from standard practice are to be expected [and] . . . [s]uch negligent oversights cannot form the basis for liability under Section 1983.").

In this case Jones has failed to point to sufficient evidence for a reasonable trier of fact to conclude that the opening of his mail outside of his presence was anything other than the result of negligence if in fact his mail was improperly opened. In "Defendants' Answer to Plaintiff's Request for Admission and Production of Documents" Defendant Beatrice Goodwin ("Goodwin"), a mail room supervisor for the CCDOC, responded to Jones' questions. Goodwin stated that she had never been disciplined for improprieties in the mail room. She also explained the procedures used in the mail room. She explained that the incoming mail is sorted through by hand and letters that appear to be from an attorney are stamped "legal mail open in the presence of inmate." If a piece of legal mail is opened by mistake it is taped shut and stamped "opened in error." Jones asks why his mail is being opened outside of his presence and why is it taking ten to thirty days for him to get his mail. Goodwin responds by stating the following:

> Your privileged mail as stated before is not being opened, read or censored on purpose. Occasionally privileged mail is inadvertently opened due to sorting

9

> errors. It is not our intent to open your legal mail. With the volume of incoming mail every day we often work through lunch and breaks to get the mail delivered to you daily. We can only deliver the mail we receive and have no control of the mail once it is delivered to the Division Security Office.

Jones has failed to point to any evidence that would suggest that the opening of his mail was the result of anything other than a reasonable mistake or at worst negligence. It is inevitable that, considering the large amount of mail processed at the jail, that mail room employees will eventually make some errors in the hand sorting of the mail and that some legal mail will be opened by accident. Jones claims to have sent 180 to 360 letters in the pertinent period and received 180 to 216 letters during that period. As indicated above there is only sufficient evidence for a reasonable trier of fact to conclude that eleven incoming letters of Jones' were legal mail that were opened outside of his presence. The fact that only eleven of 180 to 216 letters were opened suggests that the openings were inadvertent errors and not part of a planned scheme to read and censor Jones' mail. Jones' personal belief that Defendants were engaging in such a scheme is based on nothing more than his own speculation and is insufficient to warrant a trial on the issue.

We acknowledge that in *Castillo v. Cook County Mail Room Dept.* the Seventh Circuit reversed a district court's dismissal of a prisoner's claim based on the alleged improper opening of legal mail outside the presence of the prisoner. 990

F.2d 304, 307 (7th Cir. 1993). However, in *Castillo* the district court dismissed the claim as frivolous stating that the "complaint had no arguable legal basis." *Id.* at 306. Unlike with the instant motion, where we are required to look at the evidence produced during discovery, the district court in *Castillo* merely addressed whether or not the plaintiff prisoner had stated a claim. The Seventh Circuit merely held that the allegations presented before the district court were sufficient to state a claim. *Id.* at 306. Therefore, we grant summary judgment on all of the remaining individual liability claims.

## II. Official Capacity Claims

To the extent that Jones filed claims against the Defendants in their official capacities Jones is filing suit against Cook County. A suit against an individual defendant in his official capacity is the equivalent of a suit against the governmental entity that the individual represents. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997). Local governmental units cannot be held liable for Section 1983 violations under the doctrine of *respondeat superior* "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs. of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir.

1999)(stating that county could not be held liable unless violation was caused by county policy); *Gossmeyer*, 128 F.3d at 494. Although Judge Plunkett denied the motion to dismiss the official capacity claims as premature, discovery is completed and there is not sufficient evidence that would enable a reasonable trier of fact to conclude that the opening of his letters was part of a CCDOC policy, custom, or practice. In fact the evidence produced supports the notion that the CCDOC policies were designed specifically to reduce the likelihood that privileged mail would be opened. Jones argues that the improper treatment of inmate mail was part of a practice of Defendants and in support Jones includes as exhibits affidavits from fellow inmates Rickie Cole, Larry Williams, Randall Scott Jarrett, Sr., Arthur McKenzie Jr., James Dolis, Cedric M. Nelson, Josal Crawford, Albert Welton III, and Robert Jefferson. The affidavits contain vague and unsubstantiated allegations regarding mail that was allegedly improperly opened or delayed. These affidavits are insufficient to create a genuine issue of material fact warranting a trial. Therefore, we grant summary judgment on all official capacity claims.

## CONCLUSION

Based on the foregoing analysis we grant the motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 19, 2004